**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ARMANDO CHARLES, JR., 1651489,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:13-CV-2323-G** |
| | ) | |
| **WILLIAM STEPHENS, Director, Texas** | ) | |
| **Dept. Of Criminal Justice, Correctional** | ) | |
| **Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b) and a standing order of reference from the district court.  The Findings, Conclusions and

Recommendation of the Magistrate Judge are as follows:

**I.  Procedural Background**

Petitioner was convicted of two counts of aggravated kidnaping and one count of burglary

of a habitation.  *State of Texas v. Armando Charles, Jr.*, Nos. F09-39162-I, F09-39163-I and

F09-39164-I (Crim. Dist. Ct. No. 2, Dallas County, Tex., June 16, 2010).  Petitioner was

sentenced to ten years in prison for one count of kidnaping, ten years of probation for the second

count of kidnaping, and five years probation for the burglary conviction.

On June 20, 2012, the Fifth District Court of Appeals affirmed the convictions and

sentences.  *Charles v. State*, Nos. 05-10-01520-CR, 05-10-01523-CR and 05-10-01524-CR (Tex.

App. – Dallas 2012, pet. ref'd).  On January 9, 2013, the Court of Criminal Appeals refused

Petitioner's petitions for discretionary review.  Petitioner did not file any state habeas petitions.

On June 10, 2013, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He argues the evidence was insufficient to support the convictions. On October 25, 2013, Respondent filed his answer.  On November 29, 2013, Petitioner filed his reply.  The Court now determines the petition should be denied.

## II.  Factual Background

The following factual background is taken from the opinion of the Fifth District Court of Appeals.

> On February 28, 2009, appellant saw Jose Gomez at a gas station.  The two had socialized in the past and agreed to meet up later in the evening.  Gomez received a call from appellant around midnight, and appellant met Gomez at the motel where he was temporarily staying.  The two men got high smoking methamphetamine.  Gomez said appellant was "paranoid, tripped out."
>
> Later, appellant said he wanted to go see Brandi Chavez, the complainant, and Gomez agreed to ride along.  The evidence is conflicting on whether appellant and Chavez were dating at the time or had broken up.  However, it is undisputed appellant was married and had children with another woman.
>
> While driving to Chavez's home, appellant repeatedly called her, but she never answered.  Appellant was agitated because he could not reach her and because he believed Chavez was seeing another man.
>
> When they arrived at Chavez's home, appellant ran to the front door, started knocking on it, and screamed for Chavez to open it.  No one answered.  Appellant then started looking in windows around the house.  He ran back to the car, grabbed a gun, and said, "He's in there.  He's in there."  Appellant ran back to the front door and again started knocking.  When no one answered, he fired shots at the home.  He ran around the house again and then kicked in the front door.  Appellant went inside, and Gomez heard more shots fired.  Gomez then saw a man run out of the house and down the street.
>
> Appellant went to the bedroom where Chavez and her young daughter were sleeping.  He pulled Chavez by the hair and dragged her down the hall.  He also punched her in the face.  Chavez and her daughter left the house in their pajamas.  Chavez did not take her purse, cell phone, or any other identification with them.  Chavez and her daughter were both crying when they left the house and when appellant told them to get in the car.  They continued to cry while in the car.

Appellant drove back to the motel and told Gomez to leave and not return until he called. Appellant said he wanted to talk to Chavez. Gomez said Chavez and her daughter were still crying and huddled together.

While they were at the motel, officers arrived at Chavez's home and talked to the man who ran away. They observed many bullet holes on the outside and inside of the home. The front door was open. They also found Chavez's cell phone with many threatening text messages from appellant.

Sergeant Stoney Logan called the number from which the texts originated and appellant answered. Appellant admitted Chavez and her daughter were with him.

Officers located appellant's car by tracking his cell phone's GPS signal. They pulled appellant over in a McDonald's parking lot. Detective Jason O'Briant testified Chavez looked very tired, and the child was crying and saying, "Don't arrest my mommy." Chavez appeared to be nonchalant about the situation. She said everything was okay, and "This is just a crime of passion." Sergeant Logan, who arrived on the scene shortly thereafter, spoke with the little girl, who "was shaken" but he also said Chavez was nonchalant and had an attitude. He said she acted like the officers should not be there. He also stated that in his opinion, she was scared but did not want to say anything.

Chavez testified to a different version of events. She said she was in a dating relationship with appellant at the time of the events in question and that the man sleeping in her home was her ex-boyfriend. She claimed she never heard any gunshots but woke up when appellant was standing in her room yelling at her about the ex-boyfriend. She could not remember if appellant shook her to wake her up or whether he pulled her hair and dragged her down the hall. She say he "may" have pulled her hair. She did not remember receiving any of appellant's text messages. While she admitted he punched her eye, she could not remember which one. She admitted she did not know what appellant planned to do when they left, but nonetheless, she left with him anyway. She testified she left voluntarily and neither she nor her daughter were under any threat or duress. She also claimed she could leave the motel room at any time.

She testified appellant paid rent at her home and had a key. He was free to come and go as he pleased and could enter the home any way he saw fit.

Despite Chavez's testimony, the jury convicted appellant on all three counts charged in the indictments. . . .

*Charles v. State*, Nos. 05-10-01520-CR, 05-10-01523-CR and 05-10-01524-CR at *1-2.

### III.  Discussion

**1.      Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the

AEDPA), 28 U.S.C. § 2254 provide:

> (d)      An application for writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a state court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim –
>
>> (1)      resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2)      resulted in a decision that was based on an unreasonable determination of
>> the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may grant the

writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the

United States Supreme Court on a question of law or if the state court decides a case differently

from the United States Supreme Court on a set of materially indistinguishable facts.  *Williams v.*

*Taylor*, 529 U.S. 362, 380-84 (2000).  Under the "unreasonable application" clause, a federal

court may grant a writ of habeas corpus if the state court identifies the correct governing legal

principle from the United States Supreme Court's decisions, but unreasonably applies that

principle to the facts of the prisoner's case.  *Id*.

**2.      Sufficiency of the Evidence**

Petitioner argues the evidence was insufficient to convict him of kidnaping and burglary.

He states he should only have been charged with assault.

Federal habeas review of an insufficiency of the evidence claim is extremely limited.  A

federal court may not disturb a conviction in a state criminal proceeding unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991).  The evidence must be viewed in the light most favorable to the verdict. *Jackson*, 443 U.S. 319; *Gibson*, 947 F.2d at 781.

A.     **Kidnaping**

Under Texas law, the offense of aggravated kidnaping can be committed a number of ways, including as follows:

> (b)     A person commits an offense if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense.

TEX. PENAL CODE § 20.04(b).

In this case, Chavez testified that she and her daughter willingly left the house with Petitioner.  (Trial Tr. Vol. 3 at 174.)  She also stated Petitioner did not confine her or her daughter at the motel, and she could have left if she had wanted.  (*Id*. at 175.)  She testified that although she and her daughter left the house in their night clothes, this was normal for her.  (*Id*. at 153.)  She also stated she never saw a weapon and that Petitioner did not threaten her with a weapon.  (*Id*. at 175.)  Further, Officers Logan and O'Briant testified that when they found Petitioner, Chavez and her daughter at the McDonald's, Chavez was nonchalant, uncooperative and had "an attitude."  (*Id*. at 53, 60, 123.)  Chavez testified she had an active warrant for her arrest, so the police presence at the McDonald's "bothered her."  (*Id*. at 176.)  Officer Logan also testified that when he called Petitioner's cell phone to locate Chavez and her daughter, Petitioner informed him that he was at the McDonald's.  (*Id*. at 48-49.)  Petitioner remained at the

McDonald's with Chavez and her daughter until police arrived. (*Id*. at 52, 57.)

In contrast, Gomez testified Petitioner was upset when he arrived at Chavez's house and that Petitioner fired a number of gun shots into Chavez's house. (*Id*. at 77-79.) Gomez stated that when Petitioner came out of the house with Chavez and her daughter, both Chavez and her daughter were crying. (*Id*. at 82.) He testified that once they all arrived at the motel, Chavez and her daughter were huddled on the bed together and were crying. (*Id*. at 85.)

Officer Brown testified that she interviewed Chavez's seven-year-old daughter. Brown stated the daughter told her that Petitioner came into the bedroom where she had been sleeping with her mother, and that Petitioner dragged her mother out of the bed and down the hall by her hair. (*Id*. at 196.) The daughter heard her mother say, "No, stop" as Petitioner dragged her through the house. (*Id*. at 198.) During this incident, the daughter also saw Petitioner hit her mother in the face with his closed fist. (*Id*.) The prosecutor also admitted photos into evidence showing bruising around Chavez's left eye. (*Id*. at 200.)

The state appellate court considered Petitioner's claims and found:

> Although Chavez was noncommittal about what happened inside the home before leaving with appellant, her daughter told appellant that Detective Doris Brown that appellant pulled Chavez out of bed by her hair and dragged her down the hallway. The daughter also saw appellant hit Chavez in the face with a closed fist. Pictures of Chavez showed red bruising around her left eye. The daughter also said she heard her mother say "No," but appellant told her to get in the car.

> The jury also heard evidence Chavez and her daughter left the home in their pajamas, in the early morning hours, without any form of identification, purse, or cell phone. A jury could infer from these circumstances they did not plan on leaving the home.

> Gomez said both were crying and hugging each other as they walked out of the house and got into the car. They were still crying when they arrived at the motel. Based on this evidence the jury could infer appellant used or threatened to use deadly force to make them leave with him.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -6-

The jury, as the sole judge of credibility, was free to disbelieve Chavez's contrary and often evasive testimony. . . .

*Charles v. State*, Nos. 05-10-01520-CR, 05-10-01523-CR and 05-10-01524-CR at 8-10.

Viewing this evidence in the light most favorable to the verdict, the Court finds Petitioner has failed to establish the evidence was insufficient to support the kidnaping convictions.

**B.    Burglary**

The elements of burglary under Texas law are as follows:

(a)     A person commits an offense if, without the effective consent of the owner, the person:

>   (1)     enters a habitation . . . not then open to the public, with intent to commit a felony, theft or an assault; or
>
>   * * *
>
>   (3)     enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

TEX. PENAL CODE § 30.02(a).

Petitioner argues Chavez gave him full access to the home, and that the evidence showed he did not kick in the front door.

Chavez testified Petitioner paid rent at the house, had a key and was free to come and go. (Trial Tr. Vol. 3 at 172.)  She stated that on the day of the incident, he was not at the house against her wishes.  (*Id.*).  She also testified she never saw the threatening texts Petitioner sent her on the night on the incident because her phone was turned off.  (*Id.* at 169.)

Petitioner also disputes Gomez's testimony regarding how Petitioner entered Chavez's house.  Gomez testified that Petitioner entered the home by kicking in the front door.  (*Id.* at 79.) In rebuttal, Petitioner cites Officer Chevera's testimony that the front door was not damaged.  (*Id.*

at 32.)  Officer Chevera, however, also testified that the back door to the home appeared to be forced open and that the locking mechanism for the door was laying on the ground.  (*Id*. at 26, 31.)

The state appellate court found as follows:

> Gomez testified appellant was no longer in a relationship with Chavez.  Appellant was married to another woman, and Chavez was seeing another man at the time of the incident.  If appellant had a key and could enter the home at any time, it was reasonable for the jury to infer that appellant would not bang on the door but would use his key to enter.  Further, if appellant could enter the home on his own free will, he would not have fired gunshots and kicked in the door when no one answered his knocks.  Accordingly, the evidence is sufficient to prove appellant entered Chavez's home, without her consent, and with the intent to commit an assault.

*Charles v. State*, Nos. 05-10-01520-CR, 05-10-01523-CR and 05-10-01524-CR at *10-11.

Viewing this evidence in the light most favorable to the verdict, Petitioner has failed to establish the evidence was insufficient to convict him of burglary.

**3.     Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest.  Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

      This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 be DENIED.

      Signed this 15th  day of April, 2014.


                                                              PAUL D. STICKNEY
                                                             UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner

provided by law.  Any party who objects to any part of this report and recommendation must file

specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's report and recommendation where the disputed

determination is found.  An objection that merely incorporates by reference or refers to the

briefing before the magistrate judge is not specific.  Failure to file specific written objections will

bar the aggrieved party from appealing the factual findings and legal conclusions of the

magistrate judge that are accepted or adopted by the district court, except upon grounds of plain

error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).